FILED
2015 Feb-24 AM 10:51
U.S. DISTRICT COURT
N.D. OF ALABAMA

FILED
FEB 24 2015
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
<u>NORTHEASTERN DIVISION</u>

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| v. | ) | Case No. 5:14-cr-00396-RDP-TMP |
| | ) | |
| **LEWIS BERNARD HALL** | ) | |

## PLEA AGREEMENT

The Government and defendant **LEWIS BERNARD HALL** hereby acknowledge the following plea agreement in this case:

### PLEA

The defendant agrees to (i) plead guilty to **COUNT ONE** of the Indictment filed in the above numbered and captioned matter; (ii) surrender all law enforcement licenses and certifications he holds before the date of sentencing in this case; and (iii) not seek, accept or maintain employment in the field of law enforcement or in a position where he has custodial authority over other individuals, including as a correctional or probation officer, or bondsman. [Should the defendant violate this employment restriction at any time, the government will be released from its commitment to honor all of its obligations to the defendant

Page 1 of   17           Defendant's Initials _LH_

under this plea agreement. The government may then prosecute the defendant for any and all crimes he may have committed before the date of this plea agreement. The defendant agrees to waive any statute of limitations and speedy trial defenses to such charges.]. In exchange, the United States Attorney, acting on behalf of the Government and through the undersigned Assistant United States Attorney, agrees to recommend the disposition specified below, subject to the conditions in paragraphs **IX** and **X**, and will move at sentencing to dismiss the remaining counts of the Indictment.

## TERMS OF THE AGREEMENT

### I. MAXIMUM PUNISHMENT

The defendant understands that the maximum statutory punishment that may be imposed for each count charging the crime of wire fraud, in violation of Title 18, United States Code, Section 371, as charged in COUNT ONE, is:

    a. Imprisonment for not more than 5 years;

    b. A fine of not more than $250,000.00, or

    c. Both (a and b);

    d. Supervised release of not more than 3 years; and

    e. Special Assessment Fee of $100 per count.

## II. FACTUAL BASIS FOR PLEA

The Government is prepared to prove, at a minimum, the following facts at the trial of this case:

Defendant **LEWIS BERNARD HALL** was employed by the City of Huntsville, Alabama, as an officer of the Huntsville Police Department.

Huntsville, Alabama, was a local government that received benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee or other form of federal assistance during 2014. The Huntsville Police Department was an entity of the City of Huntsville, Alabama, that was funded by the City of Huntsville through, among other means, federal grant funds in excess of $10,000 received by the City of Huntsville expressly for the benefit of the Huntsville Police Department. At all relevant times, Cooperating Officer was an agent of the City of Huntsville, Alabama, and the Huntsville Police Department because he was employed by the City of Huntsville, Alabama, as an officer of the Huntsville Police Department.

This investigation was initiated upon receipt of information that Defendant Hall, a veteran of approximately 22 years, paid Cooperating Officer cash to make a drug case against a person go away by reporting to other law enforcement officers that Cooperating Officer's search of a vehicle for drugs was improper.

On or about July 29, 2014, Cooperating Officer conducted a traffic stop of Individual A in Huntsville, Alabama. Individual A was sentenced to over 15 years in prison following a federal conviction for conspiracy to distribute a controlled substance and was on supervised release at the time of the traffic stop. Cooperating Officer searched the passenger compartment of the vehicle, found 85 grams (approximately three ounces) of cocaine, and then took Individual A into custody. Based on this search, Individual A was charged with trafficking in cocaine, an offense that carries, among other penalties, a possible monetary fine of at least $50,000.00.

On or about July 31, 2014, Individual B communicated with Defendant Hall about offering money to Cooperating Officer to obtain his assistance in making the

criminal case based on the seizure of cocaine from Individual A's vehicle go away. On that same day, Defendant Hall told Cooperating Officer that if he/she would report that his/her "wingspan" search of the vehicle was too broad, thus making the case against Individual A go away, Cooperating Officer would be paid "five stacks," meaning $5,000.

Cooperating Officer reported Defendant Hall's offer of payment to fix Individual A's case to his/her superiors, which led to a covert internal criminal investigation with several recorded conversations between Cooperating Officer and Defendant Hall. The recordings corroborated the information reported by Cooperating Officer. To further the internal investigation and determine if Defendant Hall would pay Cooperating Officer, the HPD investigators spread word that Cooperating Officer did report that his/her search was improper.

On August 12, 2014, Defendant Hall met with Cooperating Officer and gave Cooperating Officer $1,000 that Defendant Hall had received from Individual B.

On September 2, 2014, officers assigned to the Madison-Morgan County Strategic Counterdrug Team (STAC) executed a search warrant at Individual A's residence. Cooperating Officer was dispatched to the search location, and he/she called Defendant Hall to tell him about the search of Individual A's residence. During the recorded conversation about the search of the residence, Defendant Hall stated, among other things: "That's something different, well, too bad;" "That's a whole 'nother deal;" "That's a totally separate deal, man;" and "Ain't got nothing to do with your deal."

On September 8, 2014, Individual A was interviewed by STAC Officers and then booked into the Madison County Detention Facility (MCDF) on a drug charge related to the case that Defendant Hall paid Cooperating Officer to fix. Individual A was allowed to make telephone calls from the jail, and he called Individual B.

Calls made by inmates in the MCDF are recorded. When someone answers the telephone being called, a recorded message is played advising the person that the call is from an inmate in the MCDF and the call is subject to being recorded. During Individual A's recorded conversation on or about September 8, 2014, with Individual B, Individual A told him that he is there (in jail) for that other thing (meaning the fixed case). Individual A said the officers got mad because he would

not cooperate and told him that this is for that first one (meaning the fixed case), and set a half million dollar bond. Individual A also told Individual B that his court date is October 8. Individual B replied: "Gonna have a God damned talk;" and then "I'm gonna have to talk to some folks then." In a call later that day, while discussing Individual A's situation, Individual B said somebody is going to have to tell him something.

A review of records of activity on Defendant Hall's telephone from on or about January 1, 2014, forward revealed no contact between Hall's telephone and Individual B's telephone until one text message on or about June 22, 2014, and one call on or about June 27, 2014. Their next telephonic contact appears to have been a text message from Individual B's telephone to Defendant Hall's telephone at 11:59 p.m., on July 30, 2014 (the day after Cooperating Officer's traffic stop and search of Individual A's vehicle and the day before Defendant Hall offered a bribe to Cooperating Officer to fix the case), followed by activity between the telephones, including two texts and at least four calls on July 31, 2014; one text and one call on August 1, 2014; one call on August 3, 2014, and two texts and two calls on August 5, 2014. There were no additional contacts between them after September 20, 2014, until a lone telephone call from Defendant Hall's telephone to Individual B's telephone on November 24, 2014.

During the evening of November 24, 2014, Defendant Hall called Cooperating Officer to meet, and then confronted Cooperating Officer to determine whether Cooperating Officer had said anything to anyone, and to tell him/her, among other things, that other police officers said Cooperating Officer was trying to burn him. Defendant Hall also said that when Cooperating Officer goes to Internal Affairs, he/she has got to stick to the story.

Then, on November 25, 2014, Defendant Hall again met with Cooperating Officer and repeatedly reviewed their story. An FBI agent observed the meeting and the conversation was recorded. Defendant Hall was in uniform and arrived in an HPD patrol car. Defendant Hall explained, among other things, that their story will be that he (Hall) told Cooperating Officer that his (Cooperating Officer's) search of Individual A's vehicle was not a good search; that someone approached him (Hall) about giving Cooperating Officer some money to drop the case but he refused; and that he told Cooperating Officer that if anyone offered him/her money or approached him/her to do anything illegal, he/she should refuse because it is not

worth going to jail. Defendant Hall warned Cooperating Officer that Internal Affairs will try to trick him, maybe even writing Defendant Hall's name on a statement, or saying the person gave a statement on both of them, but that will be a lie. Defendant Hall also told Cooperating Officer to not talk about this on the phone.

On December 8, 2014, when approached by the FBI, Defendant Hall falsely stated that he did not give money to Cooperating Officer in connection with his reporting regarding the search of Individual A's vehicle. Later during the interview, Defendant Hall admitted this statement was not true because he did offer and pay a cash bribe to Cooperating Officer to give false information about the search of Individual A's vehicle.

**The defendant hereby stipulates that the facts stated above are substantially correct and that the Court can use these facts in calculating the defendant's sentence. The defendant further acknowledges that these facts do not constitute all of the evidence of each and every act that the defendant and/or any co-conspirators may have committed.**

_____
LEWIS BERNARD HALL

### III. COOPERATION BY DEFENDANT:

The defendant agrees to waive the Fifth Amendment privilege against self-incrimination and to provide **TRUTHFUL AND COMPLETE INFORMATION** to the government concerning all aspects of the charged crimes,

including, but not limited to, the defendant's role and participation in the offenses, as well as the roles and the participation of all other persons involved in these crimes of whom the defendant has knowledge. The defendant agrees to testify against all of those individuals at any time requested by the government, including at any Grand Jury proceeding, forfeiture proceeding, bond hearing, pretrial hearing, trial, retrial, or post-trial hearing. **ALL SUCH INFORMATION AND TESTIMONY SHALL BE TRUTHFUL AND HONEST AND WITH NO KNOWING MATERIAL FALSE STATEMENTS OR OMISSIONS.**

Further, the defendant agrees to provide assistance and cooperation to the government as defined and directed by any other investigative agency or body as the United States Attorney for the Northern District of Alabama may authorize, which cooperation may include the defendant's periodic submission to a polygraph examination to determine the truthfulness and accuracy of the defendant's statements and information.

### IV. MOTION PURSUANT TO USSG § 5K1.1 AND/OR 18 U.S.C. § 3553(e):

In the event the defendant provides assistance that rises to the level of "substantial assistance," as that term is used in USSG § 5K1.1, the government agrees to file a motion requesting a downward departure in the calculation of the defendant's advisory guideline sentence. Should any of the counts of conviction

subject the defendant to a mandatory minimum sentence, the government may also seek a sentence reduction below said mandatory minimum sentence, by including in its motion a recommendation pursuant to the provisions of 18 U.S.C. § 3553(e). The defendant agrees that the determination of whether defendant's conduct rises to the level of "substantial assistance" and/or whether defendant's conduct merits consideration under 18 U.S.C. § 3553(e) lies solely in the discretion of the United States Attorney's Office.  Furthermore, the defendant agrees that the decision as to the degree or extent of the downward departure requested, if any, also lies in the sole discretion of the United States Attorney's Office.

Any motion pursuant to 5k1.1 and/or 18 U.S.C. § 3553(e) will be filed before the defendant's sentencing hearing and will outline all material assistance which the defendant has provided. The defendant clearly understands and acknowledges that because the defendant's plea is being offered in accordance with Rule 11(c)(1)(B), Fed.R.Crim.P., the Court will not be bound by the government's recommendation and may choose not to reduce the sentence at all.

## V. **RECOMMENDED SENTENCE**

Subject to the limitations in paragraph X regarding subsequent conduct and pursuant to Rule 11(c)(1)(B), Fed.R.Crim.P., the government, **in the absence of "substantial assistance"** by the defendant, will recommend the following

disposition:

 (a) That the defendant be awarded an appropriate reduction in offense level for acceptance of responsibility;

 (b) That the defendant be sentenced consistent with the low end of the advisory United States Sentencing Guideline range as that is determined by the court on the date that the sentence is pronounced;

 (c) That following any term of imprisonment, the defendant be placed on supervised release for a period to be determined by the court, subject to the standard conditions of supervised release as set forth in U.S.S.G. § 5D1.3 and any additional conditions recommended by United States Probation;

 (d) That the defendant pay a special assessment fee of $100, said amount due and owing as of the date sentence is pronounced.

## VI. <u>WAIVER OF RIGHT TO APPEAL AND POST-CONVICTION RELIEF</u>

**In consideration of the recommended disposition of this case, I, LEWIS BERNARD HALL, hereby waive and give up my right to appeal my**

conviction and/or sentence in this case, as well as any fines, restitution, and forfeiture orders, the court might impose. Further, I waive and give up the right to challenge my conviction and/or sentence, any fines, restitution, forfeiture orders imposed or the manner in which my conviction and/or sentence, any fines, restitution, and forfeiture orders were determined in any post-conviction proceeding, including, but not limited to, a motion brought under 28 U.S.C. § 2255.

The defendant reserves the right to contest in an appeal or post-conviction proceeding the following:

    (a)    Any sentence imposed in excess of the applicable statutory maximum sentence(s);

    (b)    Any sentence imposed in excess of the guideline sentencing range determined by the court at the time sentence is imposed; and

    (c)    Ineffective assistance of counsel.

The defendant acknowledges that before giving up these rights, the defendant discussed the Federal Sentencing Guidelines and their application to the defendant's case with the defendant's attorney, who explained them to the defendant's satisfaction. The defendant further acknowledges and

understands that the government retains its right to appeal where authorized by statute.

I, LEWIS BERNARD HALL, hereby place my signature on the line directly below to signify that I fully understand the foregoing paragraphs, and that I am knowingly and voluntarily entering into this waiver.

_____
LEWIS BERNARD HALL

## VII. UNITED STATES SENTENCING GUIDELINES

Defendant's counsel has explained to the defendant, that in light of the United States Supreme Court's decision in United States v. Booker, the federal sentencing guidelines are advisory in nature. Sentencing is in the court's discretion and is no longer required to be within the guideline range. The defendant agrees that, pursuant to this agreement, the court may use facts it finds by a preponderance of the evidence to reach an advisory guideline range, and defendant explicitly waives any right to have those facts found by a jury beyond a reasonable doubt.

## VIII. AGREEMENT NOT BINDING ON COURT

The defendant fully and completely understands and agrees that it is the

Court's duty to impose sentence upon the defendant and that any sentence recommended by the government is **NOT BINDING UPON THE COURT,** and that the Court is not required to accept the government's recommendation. Further, the defendant understands that if the Court does not accept the government's recommendation, the defendant does not have the right to withdraw the guilty plea.

## IX. VOIDING OF AGREEMENT

The defendant understands that should the defendant move the Court to accept the defendant's plea of guilty in accordance with, or pursuant to, the provisions of North Carolina v. Alford, 400 U.S. 25 (1970), or tender a plea of *nolo contendere* to the charges, this agreement will become NULL and VOID. In that event, the Government will not be bound by any of the terms, conditions, or recommendations, express or implied, which are contained herein.

## X. SUBSEQUENT CONDUCT

The defendant understands that should the defendant violate any condition of pretrial release or violate any federal, state, or local law, or should the defendant say or do something that is inconsistent with acceptance of responsibility, the United States will no longer be bound by its obligation to make the recommendations set forth in paragraphs IV and V of the Agreement, but instead, may make any recommendation deemed appropriate by the United States Attorney in her sole

discretion.

## XI. OTHER DISTRICTS AND JURISDICTIONS

The defendant understands and agrees that this agreement **DOES NOT BIND** any other United States Attorney in any other district, or any other state or local authority.

## XII. COLLECTION OF FINANCIAL OBLIGATION

In order to facilitate the collection of financial obligations to be imposed in connection with this prosecution, the defendant agrees to fully disclose all assets in which the defendant has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, nominee or other third party. The defendant also will promptly submit a completed financial statement to the United States Attorney's Office, in a form that it provides and as it directs. The defendant also agrees that the defendant's financial statement and disclosures will be complete, accurate, and truthful. Finally, the defendant expressly authorizes the United States Attorney's Office to obtain a credit report on the defendant in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

## XIII. AGREEMENT REGARDING RELEVANT CONDUCT AND RESTITUTION

As part of the defendant's plea agreement, the defendant admits to the above facts associated with the charges and relevant conduct for any other acts. The defendant understands and agrees that the relevant conduct contained in the factual basis will be used by the Court to determine the defendant's range of punishment under the advisory sentencing guidelines. The defendant admits that all of the crimes listed in the factual basis are part of the same acts, scheme, and course of conduct. This agreement is not meant, however, to prohibit the United States Probation Office or the Court from considering any other acts and factors which may constitute or relate to relevant conduct. Additionally, if this agreement contains any provisions providing for the dismissal of any counts, the defendant agrees to pay any appropriate restitution to each of the separate and proximate victims related to those counts should there be any.

## XIV. TAX, FORFEITURE AND OTHER CIVIL/ADMINISTRATIVE PROCEEDINGS

Unless otherwise specified herein, the defendant understands and acknowledges that this agreement does not apply to or in any way limit any pending or prospective proceedings related to defendant's **tax liabilities**, if any, or to any pending or prospective **forfeiture** or other **civil** or **administrative** proceedings.

Defendant recognizes that pleading guilty may have consequences with respect to immigration status if is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offense(s) to which defendant is pleading guilty. Removal and other immigration consequences are the subject of a separate proceeding, however, and defendant understands that no one, including attorney or the district court, can predict to a certainty the effect of conviction on immigration status. Defendant nevertheless affirms that wants to plead guilty regardless of any immigration consequences that plea may entail, even if the consequence is automatic removal from the United States.

## XV. **DEFENDANT'S UNDERSTANDING**

I have read and understand the provisions of this agreement. I have discussed the case and my constitutional and other rights with my lawyer. I am satisfied with my lawyer's representation in this case. I understand that by pleading guilty, I will be waiving and giving up my right to continue to plead not guilty, to a trial by jury, to the assistance of counsel at that trial, to confront, cross-examine, or compel the attendance of witnesses, to present evidence in my behalf, to maintain my privilege against self-incrimination, and to the presumption of innocence. I agree to enter my plea as indicated above on the terms and conditions set forth herein.

**NO OTHER PROMISES OR REPRESENTATIONS HAVE BEEN MADE TO ME BY THE PROSECUTOR, OR BY ANYONE ELSE, NOR HAVE ANY THREATS BEEN MADE OR FORCE USED TO INDUCE ME TO PLEAD GUILTY.**

I further state that I have not had any drugs, medication, or alcohol within the past 48 hours except as stated here:

I understand that this Plea Agreement will take effect and will be binding as to the Parties **only** after all necessary signatures have been affixed hereto.

I have personally and voluntarily placed my initials on every page of this Agreement and have signed the signature line below to indicate that I have read, understand, and approve all of the provisions of this Agreement, both individually and as a total binding agreement.

2-24-15
DATE

_____
LEWIS BERNARD HALL
Defendant

## XVI. COUNSEL'S ACKNOWLEDGMENT

I have discussed this case with my client in detail and have advised my client of all of my client's rights and all possible defenses. My client has conveyed to me

that he understands this Agreement and consents to all its terms. I believe the plea and disposition set forth herein are appropriate under the facts of this case and are in accord with my best judgment. I concur in the entry of the plea on the terms and conditions set forth herein.

2/24/15
DATE

ROBERT B. TOTEN
Defendant's Counsel

## XVII. GOVERNMENT'S ACKNOWLEDGMENT

I have reviewed this matter and this Agreement and concur that the plea and disposition set forth herein are appropriate and are in the interests of justice.

JOYCE WHITE VANCE
United States Attorney

2/24/15
DATE

GEORGE A. MARTIN, JR.
Assistant United States Attorney